EWING *v.* COOK.

## (*Nashville.*    January 14th, 1887.)

1. RIGHT OF REDEMPTION.    *A legal right.    Chancery jurisdiction over. Redemption by creditor.*

    The right of redemption, given by statute to the debtor whose lands have been sold under execution, is a legal right, and cannot be subjected to sale by the Chancery Courts, upon the bill of a judgment creditor whose execution has been returned *nulla bona.* The judgment creditor's remedy, in such case, is to redeem, and advance his bid on his debtor's land.

    Case cited and approved: Weakley *v.* Cockril, 6 Lea, 270.

2. SAME.    *Bill fixes no lien, and does not affect the right to assign or redeem.*

    The Chancery Court having no jurisdiction to subject the debtor's right of redemption to sale, the judgment creditor's bill filed for that purpose fixes no lien upon the debtor's right of redemption; and interposes no obstacle to its assignment by the debtor; or to the redemption of the land by the debtor, or his assignee.

    Cases cited and approved: Bank *v.* Ridgway, 3 Lea, 623; McLain *v.* Harris, 14 Lea, 510.

3. SAME.    *Redemption from judgment creditor.    Upon what terms permitted.*

    A judgment creditor, who has purchased or redeemed his debtor's lands sold at execution sale, and taken Sheriff's deed therefor, will be compelled, in equity, to submit to redemption of the lands by the debtor, or his assignee of the right of redemption, upon payment or tender of the creditor's bid, with interest and costs; and the creditor will not be permitted, after such tender, to withhold the legal title from the debtor, or his assignee, as a security for other unsatisfied judgments he may hold against the debtor.

    Case cited and distinguished: Williams *v.* Love, 2 Head, 80.

4. DEED OF ASSIGNMENT. *Person attacking cannot claim under it.*

A person who attacks and repudiates a deed of assignment, setting up a claim antagonistic to it, cannot, after being defeated, claim under the deed.

FROM WILLIAMSON.

Appeal from the Chancery Court of Williamson County. W. S. FLEMING, Ch.

DEMOSS & MALONE, and R. W. EWING for Ewing.

D. CAMPBELL & SON, and COOK & MARSHALL for Cook.

LURTON, J. After full argument by counsel this cause was decided from the bench. It is now heard upon a petition for a rehearing. The earnestness and ability of the counsel, alike determined the Court to give the case a careful reconsideration. The facts which raise the questions presented in the petition and argument are substantially as follows:

Frank Wilson was the owner of the land in controversy, being a tract of about 350 acres, and stated to be of the value of $10,000. This land had been sold at execution sale, July 2d, 1877, to satisfy two judgments against Wilson, aggregating about $400, in favor of one Caruthers. Caruthers

became the purchaser at the Sheriff's sale, bidding thereon his debt and costs, and took deed from the Sheriff.

Complainant being a judgment creditor of Wilson in about the sum of $10,000, filed an original bill in the Chancery Court, on the 28th of March, 1878, against Frank Wilson and Caruthers, charging that Wilson was insolvent, that he was a judgment creditor of Wilson, and that execution had been returned not satisfied. His bill stated the facts concerning the levy and sale of Wilson's land to satisfy the judgments in favor of Caruthers, and the purchase by Caruthers. He prayed that Wilson's right of redemption be sold, and the proceeds applied to the payment of his debt. No attachment or injunction was sought. The next day after the filing of this bill Ewing redeemed this land from Caruthers, and took deed. September 2d, 1878, and while this bill was pending, the judgment debtor, Wilson, assigned and transferred the land in question to the defendant, II. H. Cook, in trust to secure certain creditors therein named, and authorizing Cook, as his trustee, to redeem this land for the benefit of his creditors thus secured. In December, 1878, Wilson died, leaving a will, by which he devised his interest in this land to Cook, in trust for the benefit of the testator's minor children. A few days before the time of redemption expired Cook offered to redeem the land from Ewing, making a sufficient tender of the redemption money paid by Ewing to Ca-

ruthers, together with the advance required by statute which had been made by Ewing, with interest, costs, etc.

Ewing declined to permit redemption unless the whole of his debt should be paid in addition to the amount of his redemption bid. Ewing had failed to advance his redemption bid within twenty days after redemption, or at any other time, but nevertheless demanded that the whole of his debt, whether bid upon the land or not, should be paid to him. Upon Ewing's refusal to permit redemption, Cook filed his bill, stating all these facts, and, bringing the tender he had made into Court, prayed that Ewing be compelled to submit to redemption, and that the legal title to the land of Wilson be divested out of him and vested in the complainant. The right by bill in equity to subject to sale the debtor's right of redemption is most earnestly insisted upon by Ewing, upon the ground that this right of redemption is an interest in land, and such a one as cannot be reached by execution, and that therefore the Chancery Court has jurisdiction to subject such interest to the satisfaction of the judgment in favor of complainant. The right of a judgment debtor to redeem his lands sold under execution is not an equitable right at all. It is the creature of statute and depends on statute law, and in no sense a right either created or regulated by principles of equity. The right of redemption given by statute both to the judgment debtor and judgment

creditors is a legal and not an equitable right.
Strictly speaking, there is no estate in the judg-
ment debtor after sale and conveyance of his land
under judgment sale. Nothing remains to the
debtor, after execution sale, and Sheriff's deed,
save a statutory right of redemption. This right
of redemption has sometimes been spoken of as an
equitable right, and his interest in the land sub-
ject to redemption as an equitable estate. This
terminology springs from the supposed analogy be-
tween the statutory right of redemption and the
equity of redemption of a mortgageor. But what-
ever may be the technical character of the inter-
est springing from the right of redemption given
to a judgment debtor whose lands have been sold
under execution, it is not one which may be
reached and subjected to sale by a creditor who
is in condition to redeem as provided by statute.
This is not an open or debatable question in this
State. Ewing was a judgment creditor of Wilson,
and as such had a right to redeem, and within
twenty days to have advanced his redemption bid
to any sum within the limit of his judgment.
The right of redemption he did exercise the day
after he filed his bill. He had the plain, unques-
tioned right to have placed his whole debt on
this land at any time within twenty days by cred-
iting such advance bid upon the judgment he held
against Wilson. This plain and most obvious
course he, for reasons not clearly discernible, neg-
lected or refused to pursue. He had, undoubtedly,

Ewing *v.* Cook.

the right to stand upon all the rights he had acquired by the filing of his bill to sell the debtor's right of redemption, and, preferring this course, he must abide the consequences. The Chancery Court having no jurisdiction to subject to sale the debtor's right of redemption upon a bill by a judgment creditor, we are of opinion that the filing of his bill fastened no lien on the debtor's right of redemption, and was no obstacle to either a redemption by the debtor or an assignment by the debtor of his right of redemption.

This is the obvious rule, as laid down by this Court in the case of *Weakley* v. *Cockril*, 6 Lea, 270, a thoroughly considered case, in which the opinion of Chancellor Cooper to the contrary was reversed. This case has been several times followed by this Court, and we are not at all disposed to question its correctness. That the pendency of this bill was no obstacle to a redemption by either the debtor or a judgment creditor is well decided in the case of *Bank* v. *Ridgway*, 3 Lea, 623. The assignment by Wilson to Cook of his right of redemption, was therefore valid, and vested in Cook the same right to redeem which the statute had given to Wilson. This transfer of this land and the right to redeem same was to Cook in trust and for the benefit of the creditors of the assignor. It in no way defeated or prevented any creditor who had a right to redeem from exercising such right. Cook, by the assign-

22

ment, simply took the share of Wilson. *McClain* v. *Harris*, 14 Lea, 510.

The next point insisted upon is that Ewing cannot be compelled to submit to redemption by the judgment debtor, Wilson, or his assignee, Cook, until his whole debt is paid.

The argument made in favor of this position is that, inasmuch as Ewing has obtained the legal title by his redemption from Caruthers, a court of equity will not divert this legal title out of him, or compel him to submit to being redeemed by Wilson, his debtor, or his assignee, Cook, until his whole debt is paid. The case of *Williams* v. *Love*, 2 Head, 80, is relied upon to support this contention. *Williams* v. *Love* was well decided, and we are not in the least disposed to criticize it. Its application to the facts of this case is, however, not discernible. Ewing held this land subject to the legal right of redemption by either the judgment debtor himself or any judgment creditor of Wilson. If Ewing had availed himself of his statutory right to advance his debt upon his redemption bid, neither the debtor, or his assignee, or a creditor could have redeemed without paying the whole of the debt thus placed upon the land. Having failed to do this, he nevertheless insists that his status is in effect the same as if he had advanced his redemption bid as required by law. If this position be sound, then the statutory right of redemption secured to the debtor is effectually

Ewing *v.* Cook.

destroyed. A consequence of this doctrine would be that the debtor would lose his land for an insignificant proportion of its value and his debt remain unpaid. The legislative purpose in securing both to the judgment debtor and his creditors a right of redemption was to make the land pay as large a part of the debts of the owner as possible. The creditor who buys at execution sale must, within twenty days, advance his bid or he will be subject to redemption by either the debtor or another 'creditor at the amount of his original bid and the slight advance prescribed by statute. So when one creditor redeems from another, the former is required to advance such part of his debt as he desires to secure within twenty days or he may be redeemed from without being paid anything more than his redemption money, with interest, etc. The manifest purpose of all this is that the land shall pay as much of the debts of the debtor as its value. The position contended for, if once sanctioned, would have the contrary effect. The creditor might refuse to bid anything like the value of the land, and yet have a debt greater than its whole value. He might refuse to advance his bid, and thus enable the debtor to relieve himself of debt to the extent of the value of the land, and yet refuse redemption when the debtor tendered the amount of his bid, and demand the full payment of a debt greater in amount than the value of the land. Thus the unfortunate debtor would lose his land, and his debt re-

main unpaid. Such a result this Court can never
sanction.

The broad distinction between the case before us
and that of *Williams* v. *Love,* is, that in that case
the legal title which Love held was not subject
to the statutory right of redemption. There the
legal title could not be divested, except by and
through the power of a court of chancery, which
might refuse to exercise its functions, save upon
condition that the party seeking the aid of equity
should do equity.

Again, the equity of Love was equal to the
equity of Williams, and the former had the ad-
vantage of the legal title. Equities being equal,
the holder of the legal title has the better case,
and will not be disturbed, except upon equitable
principles. That Cook has been compelled to come
into a court of equity to compel redemption, does
not put him in the attitude of Williams, or find
Ewing in the status of Love. Out of the posi-
tive wrong of Ewing in refusing to convey the
legal title upon a tender of all that he was le-
gally entitled to demand, cannot spring an equitable
right to hold on to that which the statute law
of the State says he shall surrender. This Court
will regard as done that which ought to have been
done, and treating this redemption as having been
legally made, will divest out of him the naked
legal title which he wrongfully withholds. The
statutory right of redemption cannot be defeated
by the refusal of Ewing to convey when a lawful

tender was made to him of all which he was le-
gally entitled to demand. That he will lose his
debt may be regretted. He had a plain, straight-
forward way to have saved it, by advancing it
upon his redemption bid. He declined this method
and has hazarded all upon an experimental litiga-
tion. That he was a trustee is no sufficient reason
for not advancing his debt upon the land. He
deemed himself to have authority to redeem from
Caruthers, and it was no greater assumption of
power to have advanced his bid to something like
what he deemed the land to be worth. But if
he had no authority to advance his bid we should
not deem the legal aspects of the case at all al-
tered. The statutory right of redemption in the
debtor cannot be defeated because his creditor did
not make, or have authority to make, a larger
bid. We are urged to construe the rights of
Complainant Ewing under the deed of assignment
to Cook. As before stated, this deed was made
for the purpose of securing certain creditors named
therein. The debt due to Ewing was secured in
this assignment, so far as the "debt has a pri-
ority, or is a lien on said property by reason of
levy, sale, or otherwise, but no further." Without
undertaking to state all the facts concerning this
debt, and the various suits brought to collect it,
it is sufficient to say that we do not think it was
a lien on this land at the time of the assignment
of the land and the right of redemption to Cook.
The same result would probably be reached even

if it had been a lien, for complainant has not claimed under this assignment, but has resisted it in every way possible, and ought not to be permitted to now claim under it. It is sufficient to say that we do not think complainant has any rights under this assignment.

The petition for rehearing will be dismissed.