# PORTER *v.* LEE.

## (*Jackson.* June 7, 1890.)

1. TRUSTS. *Will creating an active trust.*

Devise to trustee to take "charge and possession" of the property and rent it, "and collect all rents and profits" thereof, and after paying for necessary repairs and improvements and retaining his own compensation, to "pay over remainder of rents accruing from the property" to the five children of the testator equally, or, in the event of the death of any of them, then to his issue; but if there be no issue, then to testator's surviving children. The will was "duly recorded." There was no express provision excluding creditors of the devisees.

*Held:* This is an active trust. The trustee takes and holds the legal title during the lives of testator's children. The latter take an equitable interest during their lives, which is not subject to levy under execution at law.

Cases cited and approved: Davis *v.* Williams, 85 Tenn., 646; Henderson *v.* Hill, 9 Lea, 25; Jourolmon *v.* Massengill, 86 Tenn., 93; Henson *v.* Wright, *ante*, 501.

2. SAME. *Same. Equitable jurisdiction over such interests.*

The interests taken by testator's children under such will cannot be reached through a Chancery Court by a judgment creditor with return of *nulla bona.*

3. CHANCERY COURT. *Jurisdiction to compel discovery and subject debtor's equitable interests.*

Chancery Courts have not, under our statutes, any power or jurisdiction to compel discovery of a debtor's property of an equitable nature, and to subject same to his debts at the suit of his judgment creditor with return of *nulla bona,* where the property is held in active trust for the debtor, created by some third person, and "declared by will duly recorded or deed duly registered."

Porter *v.* Lee.

Code construed: §§ 5025, 5026 (M. & V.); §§ 4282, 4283 (T. & S.).

Cases cited: Erwin *v.* Oldham, 6 Yer., 189; Ewing *v.* Cantrell, Meigs' R., 378; Cresswell *v.* Smith, 2 Tenn. Ch., 423, 424; Turley *v.* Massengill, 7 Lea, 365, 366; Jourolmon *v.* Massengill, 86 Tenn., 121, 122; Henson *v.* Wright, *ante*, 501; 1 Hopkins' Ch. R., 59; 35 N. Y., 366.

4. SUPREME COURT. *Opinions of as authority.*

Opinion of Court determining cause upon two distinct and independent grounds, either decisive of the case, is authority upon both questions decided.

Case cited and approved: Bates *v.* Taylor, 87 Tenn., 325.

---

## FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

C. W. FRAZER for Porter.

CRAFT & CRAFT for Lee.

CALDWELL, J. The bill in this cause was filed by a judgment creditor with return of *nulla bona*, to subject the equitable interests of her debtors in certain real estate to the satisfaction of her judgment. The debtors, answering, admit the judgment and return of the execution unsatisfied, but they deny the power of the Court to reach such

interests as they own in the property, the same having arisen under a devise in trust for their benefit, by will duly recorded. The learned Chancellor, being of opinion that a Court of Equity had no jurisdiction in such a case, dismissed the bill, and from his decree the complainant has appealed to this Court.

The defendants are the children and the nominated trustee of Robert Williams, who died testate some years since, at his home in the State of Mississippi. The property sought to be subjected is that received by his children (the judgment debtors of complainant in this cause), as devisees under his last will and testament, which is in the following language:

"I do will and devise to my friend, H. E. Garth, of the city of Memphis, Tenn., in trust for the uses and purposes hereinafter expressed, the following named real estate, situated in the city of Memphis, Tenn., to wit: [here follows a description of the property], with all the improvements on all the aforesaid lots. It is my will and desire that the said H. E. Garth, trustee, and his successor or successors, shall at my death take charge and possession of the said described property and real estate, and rent the same, and collect all rents and profits accruing in any manner from said property, and after paying for all necessary repairs and improvements that may be required to keep said property in good and tenantable condition, and all taxes that may be lawfully

imposed upon said property, the said trustee shall pay over the remainder of rents accruing from said property to my son, Edward P. Williams, my daughter, Mary Lee, my daughter, Rebecca Villines, my daughter, Winnie Davis, and my daughter, Margaret Williams, equal portions to each. At the death of either of my said children, it is my will that the child or children of such one dying shall receive the part or portion of said rents. and profits that their father or mother was entitled to under this will; and should any of my said children die without children or child, then, and in that event, his or her share or portion shall be paid over to the survivors in equal shares and portions, and the children of such as may have died leaving issue. It is my will and desire that the said H. E. Garth, trustee as aforesaid, shall retain and receive from the rents and profits of said property the sum of fifty dollars per month, as full compensation for his services in attending to the execution of this will, he having agreed to accept the trust upon these terms. This done the eighth day of April, 1878."

This will was duly probated and recorded in Mississippi, where the testator resided, and also in Shelby County, Tennessee, where the property now in question is situated.

At the April Term, 1887, at the suit of parties concerned, the instrument came before this Court for construction, and was held to give an equitable life estate to the children of the testator, with re-

mainder in fee to his grandchildren, the trustee taking the legal title during the continuance of the life estate only. *Davis* v. *Williams*, 1 Pickle, 646.

Garth had not then, and has not yet, entered upon the duties of the trust, nor has any one qualified in his stead; but that cannot affect the rights of the parties to this litigation, for a Court of Equity never permits a trust to fail for lack of a trustee.

The devolution upon the trustee of important duties with respect to the dominion and management of the property, its repair, improvement, taxes, rents, and profits, makes the trust an active one, and limits the estate of the children of the testator to a mere equitable interest, which interest is clearly not subject to levy and sale under execution at law. Perry on Trusts, Sec. 307; *Henderson* v. *Hill*, 9 Lea, 25; *Jourolmon* v. *Massengill*, 2 Pickle, 93; *Henson* v. *Wright*, 4 Pickle, 501.

That she cannot reach this interest by execution at law, complainant concedes in her bill, and for that reason she comes into the Chancery Court to have it subjected by decree.

It is apparent from the plain terms of the will that the testator's children take the net rents and profits of the real estate devised, without limitation or restriction upon their use of the same. Because such restraint is wanting, and the use of the net rents and profits is left to the free will and discretion of the beneficiaries, complainant in-

sists that the interest of her debtors is liable for her judgment, and that a Court of Equity has full jurisdiction to subject it for that purpose, just as it would have jurisdiction to subject any other interest in land devised.

There is much learning in the books relative to the origin and power of the Court of Chancery, its original and its ancillary jurisdiction, the former of which has for its foundation some matter of trust, fraud, accident, account, etc., and the latter being assumed and entertained alone to remove some impediment thrown in the way of the creditor's legal remedy. But it is not our purpose to enlarge upon these questions, for we think the question raised in this case must be determined by a construction of Section 1, Chapter 11, of the Act of 1832. Whether the relief sought could have been obtained under either the original or the ancillary jurisdiction of the Chancery Court prior to the passage of that Act need not, therefore, be here discussed or decided. Whatever may previously have been the power of that Court with respect to the subjection of such an interest in real estate as the complainant in this case seeks to have applied to the payment of her debt, we are convinced that the Act in question must be taken as the full measure of jurisdiction now existing in such a case. The words of the section referred to, as carried into the Code, are these:

"The creditor whose execution has been returned unsatisfied, in whole or in part, may file a

bill in chancery against the defendant in the execution, and any other person or corporation, to compel the discovery of any property, including stocks, choses in action, or money due to such defendant, or held in trust for him, except when the trust has been created by, or the property so held has proceeded from, some person other than the defendant himself, and the trust is declared by will duly recorded, or deed duly registered." Code, § 4283.

The facts of this case manifestly bring it within the terms and meaning of the statute, and except it from the jurisdiction of the Chancery Court. Here "the trust has been created by" a person other than the defendants themselves, and "is declared by will 'duly recorded." By the statute, property held under a trust so created, declared, and published, is expressly excepted from that extensive list of assets of the debtor which the creditor may discover and subject to his debt through the process and decree of the Chancery Court.

That the net rents and profits are to be paid by the trustee to the beneficiaries themselves, and that there is no restriction upon their use of the fund when received from him, are immaterial circumstances in determining the jurisdiction of the Court, or in reaching a proper construction of the statute on which that jurisdiction depends. The exception of the statute is not made to flow from any intention, expressed or implied, of the founder

of the trust that the trustee shall himself expend the fund for the benefit of the beneficiaries, or that their use of it when paid into their hands shall be restricted, or that it shall be exempted from their debts, or that they shall have no power of alienation. None of these seem to have occurred to the Legislature; none of them are mentioned in the Act. The only facts necessary to bring a given case within the exception, and secure the property or fund against the power of the Chancery Court to subject it to the payment of the owner's debts, are named in the face of the statute itself, to wit: That "the trust has been created by, or the property so held has proceeded from, some person other than the defendant himself, and the trust is declared by will duly recorded, or deed duly registered."

In 1823 Chancellor Sanford held that a judgment creditor could not maintain a bill to subject legacies due his debtor to the satisfaction of his judgment, such a case not coming within either the original or ancillary jurisdiction of the Court of Chancery. This decision was made in the case of *Donovan* v. *Finn*, 1 Hopkins' Ch. R., 59, and is authoritatively said to have produced the New York statute of 1828, enlarging the jurisdiction of the Chancery Court in that State.

On the authority of that case this Court held, in *Erwin* v. *Oldham*, 6 Yer., 189, that a bill by a judgment creditor would not lie to subject his debtor's stock in the Nashville Bridge Company

to the satisfaction of the judgment. Though the decision in the latter case was not actually announced until 1834, it is a part of the judicial history of the State that the decree of the Chancery Court therein and the opinion intimated by this Court, on the argument in March, 1832, produced, in October following, our Act of 1832, Ch. 11, which is almost a literal copy of the New York Act of 1828. Note by Mr. Meigs to *Ewing* v. *Cantrell*, Meigs' R., 378; *Cresswell* v. *Smith*, 2 Tenn. Ch., 423, 424.

These two Acts are so closely connected in their origin, and so nearly the same in their language, that a previous construction of the one must be useful in a later construction of the other. In this view we refer to the case of *Campbell* v. *Foster*, 35 N. Y., 366, wherein, in the year 1866, the Court of Appeals, in determining the extent of the jurisdiction of the Chancery Court of New York to subject intangible property since the Act of 1828, said that the provisions of that Act "ought to be regarded as exclusive of any other authority for effecting the same end." That construction is the same we have, in this opinion, given our Act of 1832. It was criticised and rejected by this Court, speaking through Judge Andrews, in the case of *Turley* v. *Massengill*, 7 Lea, 365, 366, and six years later it was approved and applied in the case of *Jourolmon* v. *Massengill*, 2 Pickle, 121, 122. In the latter of our cases Judge Lurton delivered the opinion of the Court. Re-

Porter *v.* Lee.

ferring to the Act of 1832, Ch. 11, Sec. 1, he said: "Here, then, is an express and positive legislative limitation upon the jurisdiction of the Chancery Court. We can put no other meaning upon this legislation than that it is not in the power of a Court of Equity to subject to the satisfaction of the demands of a creditor the income of a trust fund, whether the fund or property be realty or personalty, where such trust was created by one other than the debtor." *Ib.*

This language is none the less an adjudication, and binding as such, because another question conclusive of the case was considered and decided in an earlier part of the opinion. That other question and the construction of the statute were alike before the Court, and the decree was based upon both grounds. As to both, the decision was a legitimate adjudication; as to neither was it a mere *dictum. Bates* v. *Taylor,* 3 Pickle, 325. Nor can the fact that the Court was there considering a spendthrift trust, which in express terms protected the trust estate from the debts of the *cestui que trust,* deprive the language used in the construction of the statute of the force of an adjudication; for the applicability of the statute in that case was based alone upon the fact that the trust proceeded from a third person, and not, in any degree, upon the other fact of exemption from debts by the terms of the will.

As we have already seen, the exception of the statute arises from the facts therein recited, and

not from the restrictions which the founder of the trust may place upon the use, or the power of alienation of the trust fund by the beneficiary after payment to him by the trustee. It was so treated in that case, and the result would have been the same without the spendthrift feature of the trust as with it.

It must always be borne in mind that we are, in this opinion, speaking of an *active trust*, where the estates of the trustee and of the beneficiary are distinct and not subject to merger; for, if the trust is not an active one, it does not fall within the terms of the statute at all, but the two estates of the trustee and beneficiary, in case of land, will merge in the beneficiary, and the estate thus created becomes subject to execution at law.

The 7 Lea and 2 Pickle cases, just referred to, involved the validity of the same trust. In the former it was held to be invalid as against public policy, and, further, that it was not within the exception of the Act of 1832, while in the latter the contrary was held on both propositions, and the former case was expressly overruled.

The construction given the statute in *Jourolmon* v. *Massengill* was recently approved in the case of *Henson* v. *Wright, ante,* 501.

Learned counsel for complainant have urged upon our consideration § 4282 of the Code, which they contend confers power on the Chancery Court to grant the relief sought in this case. That section had its origin with the Code of 1858, and is

not a part of Section 1, Chapter 11, of the Act of 1832, though so noted by the compilers of the Thompson & Steger Code. See original Act; also Caruthers & Nicholson, pages 222, 223.

It has been the law, however, since the adoption of the Code of 1858, and is in the following language: " They [the Chancery Courts] have exclusive jurisdiction to aid a creditor by judgment or decree to subject the property of the defendant which cannot be reached by execution, to the satisfaction of the judgment or decree, under the provisions of this Code."

It is easily to be seen that it is here declared that Chancery Courts have *exclusive jurisdiction* to subject property which *cannot be reached by execution,* and this declaration is, by itself, comprehensive enough in its literality to embrace any kind or character of property not subject to the creditor's execution at law; but the concluding clause of the section is restrictive in its nature, and permits the exercise of that jurisdiction "under the provisions of this Code" only, and not in every case that may arise. So we must, in fact, look beyond this section and to other "provisions" of the Code to ascertain the extent of that jurisdiction and determine the cases in which it may be exercised. In doing this, no provision is to be found which authorizes the subjection of such an interest in property as that owned by the judgment debtors in this case. If the trust had been created by the debtors themselves, or if the will

by which it is declared had not been duly recorded, then their interest in the property might be subjected in a Court of Equity under the next section (§ 4283) of the Code; but having been created by a third person, and having been declared by will duly recorded, the case falls necessarily within the exception of that section, and excludes the jurisdiction.

The policy of a statute with such an exception is a matter for the consideration of the Legislature, and not for the Courts. However, in defense of the statute, it may be well and truthfully remarked that a trust created by a third person is a mere gratuity, and, if declared by will duly recorded, or by deed duly registered, the creditors of the beneficiary are neither misled nor defrauded thereby.

Let the decree be affirmed, with costs.